# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCIA WOODS, et al. | : | |
| | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | NO. 17-1903 |
| SECRETARY OF HOUSING & URBAN DEVELOPMENT, et al. | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                                   **October 16, 2017**

## MEMORANDUM OPINION

Plaintiff Marcia Woods brings this action, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, seeking personal injury damages against Defendants, the Secretary of Housing and Urban Development and the U.S. Department of Housing and Urban Development ("HUD"). Defendants have moved to dismiss the Complaint, under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction. For the following reasons, I will grant the motion and dismiss the case.

## I.      FACTS IN THE COMPLAINT AND PROCEDURAL HISTORY

According to the Complaint, on May 18, 2015, Plaintiff was a pedestrian at or near 7245 N. 21st Street, Philadelphia, Pennsylvania, which is a property operated, controlled, and/or managed by Defendants. (Compl. ¶¶ 8, 10.) Plaintiff allegedly suffered injuries to her hands and fingers due to a broken, loose, and/or detached handrail located at the exterior of the premises. (Id. ¶¶ 9, 12.)

Plaintiff initiated suit on April 25, 2017, alleging negligence against Defendants.  On June 23, 2017, Defendants filed the current Motion to Dismiss for Lack of Jurisdiction, and Plaintiff responded on July 5, 2017.  The case was reassigned to my docket on October 5, 2017.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case.  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Id. at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction.  Mortensen, 549 F.2d at 891.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. Id.  With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence.  Petruska, 462 F.3d at 302 n.3; see also Gould Elecs., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Petruska, 462 F.3d at 302 n.3 (quoting Mortenson, 549 F.2d at 891).

## III. DISCUSSION

Defendants argue that, under the doctrine of sovereign immunity, the Court lacks subject-matter jurisdiction over this case. They contend that because the claims at issue do not fall within the FTCA's waiver of sovereign immunity, the Complaint must be dismissed.[1] Plaintiff responds that HUD was responsible for the property in question and therefore can be held liable.

The United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity. Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 93–94 (3d Cir. 1995). "[W]aivers of federal sovereign immunity must be unequivocally expressed" in the statutory text and "[a]ny such waiver must be strictly construed in favor of the United States." U.S. v. Idaho ex rel. Director, Idaho Dep't. of Water Res., 508 U.S. 1, 6–7 (1993) (internal quotation marks omitted). If there is no waiver, then the court does not have

---

[1] The FTCA generally permits claims against the United States for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §§ 1346(b). Claims brought under the FTCA, however, may only be brought against the United States; federal agencies are never appropriate defendants. 28 U.S.C. § 2679(a); see also Feaster v. Fed. Bureau of Prisons, 366 F. App'x 322, 323 (3d Cir. 2010). Likewise, federal employees cannot be sued in their official capacities "because a suit against a federal official in his official capacity is, in fact, a suit against the United States." Goodson v. Maggi, No. 08–44, 2010 WL 1006901, at *5 (W.D. Pa. Feb. 22, 2010) (citing Kentucky v. Graham, 473 U.S. 159, 165–67).

Here, Plaintiff has brought suit under the FTCA against HUD and HUD's Secretary in his official capacity. As they are not proper defendants, I will, for purposes of this motion, construe Plaintiff's claims as being brought against the United States.

subject matter jurisdiction over the case. United States v. Bein, 214 F.3d 408, 415 (3d Cir. 2000).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. constitutes one type of such waiver. Matsko v. U.S., 372 F.3d 556, 558 (3d Cir. 2004). The FTCA waives the United States' sovereign immunity as to money damage claims for injury caused by the negligent or wrongful act or omission of an "employee of the government" acting within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Beneficial, 47 F.3d at 95–96 (quoting 28 U.S.C. § 1346(b)). The definition of "employee of the Government" specifically excludes "any contractor with the United States," thereby creating the "independent contractor exception." Norman v. U.S., 111 F.3d 356, 357 (3d Cir. 1997) (citing 28 U.S.C. § 2671). Under this exception, the United States has not waived its sovereign immunity and cannot be sued if the claim alleges a negligent or wrongful action by an independent contractor. See United States v. Orleans, 425 U.S. 807, 814 (1976).

The application of the independent contractor exception, particularly in a personal injury case, turns on whether the United States "control[s] the physical conduct of the contractor in performance of the contract." Logue v. United States, 412 U.S. 521, 527 (1973). Stated differently, the question is "whether [the contractor's] day-to-day operations are supervised by the Federal Government." Orleans, 425 U.S. at 815. "Broad governmental oversight is not sufficient to elevate a government vendor or service provider from independent contractor to employee status for the purpose of the FTCA." Smiley v. Artisan Builders, No. 13-7411, 2015 WL 3948044, at *4 (E.D. Pa. June 26, 2015). Rather, to make this determination, courts "have looked to the contract between the United States and the contractor to determine whether the

4

United States exercised day-to-day supervision over the work of the contractor." Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000). "Only convincing proof that a federal employee exercised supervisory control over an independent contractor's daily operations will subject the Government to liability for the negligence of its contractor." Courts v. U.S., No. 15-7303, 2016 WL 4521687, at *3 (D.N.J. Aug. 29, 2016).

The United States Court of Appeals for the Third Circuit addressed the independent contractor exception in Norman v. United States, 111 F.3d 356 (3d Cir. 1997). The plaintiff in that matter had fallen on water and ice on the floor at the entrance of a federal building. Id. at 351. The District Court found that an independent contractor had been given broad responsibility for the daily maintenance of the federal building—including the area where the plaintiff allegedly fell—under a contract that specified the location and frequency of the maintenance requirements and the quality requirements for the contractor's work. Norman v. U.S., No. 95-4111, 1996 WL 377136, at *2 (E.D. Pa. July 3, 1996). Although the contract required that the contractor comply with the government's maintenance and inspection standards, it did not authorize the government to physically supervise the contractor's employees. Id. at *3. On this record, the District Court determined that the contractor was an independent contractor, thereby exempting the United States from liability and depriving the federal court of subject matter jurisdiction. Id. The Third Circuit affirmed the Rule 12(b)(1) dismissal, concurring that the contractor "was given broad responsibilities for daily maintenance" and the contract explicitly stated that "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised." Norman, 111 F.3d at 357–58.

In Smith v. Steffens, 429 F. Supp. 2d 719 (E.D. Pa. 2006), the district court reached an identical outcome on similar facts. The plaintiffs were injured when the basement steps of a

property owned by HUD collapsed under them. Id. at 720. The government sought a Rule 12(b)(1) dismissal and produced a copy of a contract with an independent contractor to "manage, market and oversee the sales closing activity" for the property. Id. The court found that, under the contract, HUD had turned over the day-to-day management of the property to the independent contractor. Id. at 721. The mere fact that the government retained some limited oversight power was not enough to deem the independent contractor an "employee" of the government. Id. at 722. On that record, the court found that the independent contractor exception applied and dismissed the complaint against the United States for lack of subject matter jurisdiction.[2] Id. at 723.

Here, like the foregoing cases, the evidence establishes that an independent contractor had broad responsibilities for maintenance of the subject property and that the contractor was not subject to any day-to-day management, supervision, or control by HUD. Under HUD's Single Family Property Disposition Program, HUD disposes of properties acquired by the Federal Housing Administration through foreclosures of insured mortgages. (Defs.' Mot. to Dismiss, Ex.

---

[2] Other cases within the Third Circuit have also applied the independent contractor exception based almost exclusively on the contract between the United States and the contractor. See, e.g., Courts v. U.S., No. 15-7303, 2016 WL 4521687, at *5 (D.N.J. Aug. 29, 2016) (holding that where a lease turned over responsibility for janitorial services of premises to independent contractor and plaintiff produced no evidence that government employees supervised day-to-day operations, independent contractor exception applied); Jackson v. Grondolsky, No. 09-5617, 2012 WL 960450, at *9 (D.N.J. Mar. 20, 2012) (dismissing case for lack of subject matter jurisdiction where the plaintiff failed to contradict the clear language of the agreement between the contracting doctor and the Bureau of Prisons, which "overwhelmingly indicate[d]" that the doctor was an independent contractor); Balkonis v. U.S., No. 01-5541, 2002 WL 32348285, at *3 (E.D. Pa. Aug. 14, 2002) (dismissing case for lack of subject matter jurisdiction because, under the terms of a HUD management contract, the management company "was responsible for preventing and correcting any dangerous conditions on the property"); Brimfield v. U.S. Dept. of Hous. & Urban Dev., No. 02-3684, 2002 WL 31513375, at *3 (E.D. Pa. Oct. 17, 2002) (finding that, under the terms of the HUD management contract, the management company was responsible for the removal of any safety hazards as of the effective date of the contract, thereby precluding a waiver of sovereign immunity).

6

1, Decl. of Michael Curry ("Curry Decl.") ¶¶ 3, 7.) In connection with that program, HUD contracts with field service managers who are responsible for property maintenance and preservation. (Id. ¶ 6.)

HUD entered into a contract with A2Z Field Services, LLC ("A2Z") on June 1, 2010. (Id. ¶ 7.) Pursuant to the contract, A2Z was responsible to "take proper health and safety precautions to protect workers, the public and the property of others" and was to "be responsible for any and all injuries/damages to any and all individuals . . . that occur as a result of the Contractor's performance under this contract." (Id., Ex. A, § H.1.) Further, the contract provided that property management responsibilities under the contract included inspections, preservation of property from conveyance to sale, maintenance and preparation of properties intended for sale, management of rental properties, and management and maintenance of properties in the custody of, but not owned by HUD. (Id., Ex. A, § 5.1.) The contract mandated that:

> The Contractor shall maintain all properties in a manner that results in properties that are clean, safe, sanitary and secure. The Contractor shall be liable for damages to all acquired properties due to failure to inspect or secure property or other act, neglect, failure, or misconduct of the Contractor, a Subcontractor, or any Management Official of any of the foregoing. The Contractor shall indemnify HUD for losses due to any act, neglect, failure or misconduct of the Contractor, a Subcontractor, or any Management Official of any of the foregoing.

(Id., Ex. A., ¶ 5.2.3.) The contract also explicitly stated that the contractor was responsible for maintaining and implementing a comprehensive quality control plan, including "a detailed inspection oversight program covering all general and specific tasks." (Id., Ex. A, § 5.1.7.1.) Further, the contractor was to conduct routine inspections to ensure the properties are "free from

health and safety hazards," subject only to quality assurance inspections by HUD.[3] (Id., Ex. A, §§ 5.2.3.2, 5.2.3.3.)

On May 14, 2015, HUD assigned the specific property at issue to A2Z for property maintenance and preservation services. (Curry Decl. ¶ 10, Ex. C.) Michael Curry, the Director of the Real Estate Owned Division of the Philadelphia Homeownership Center of the United States Department of HUD averred that "[n]either HUD as an agency, nor any of its employees, exercised daily, detailed control over A2Z's maintenance of the subject property or any other execution of its duties" under the contract. (Id. ¶ 14.) A2Z was responsible for routine inspections of the subject property as part of its duties. (Id. ¶ 15.) In fact, on May 14, 2015 and May 20, 2015, A2Z completed such inspections and found no hazardous condition involving an exterior handrail. (Id. ¶¶ 15–16 & Ex. D.)

Given this record, the undisputed evidence establishes that A2Z had control over the maintenance and safety of the subject property where Plaintiff was injured, was required to conduct routine safety inspections at the property, actually conducted an inspection of the subject property just prior to Plaintiff's injury, and assumed liability for any losses to individuals as a result of undiscovered hazardous conditions at the property. Plaintiff has produced no evidence that Defendant had any day-to-day supervisory responsibility at the subject property. As such, this case falls within the independent contractor exception to the FTCA.

Without addressing any of the aforementioned facts or case law, Plaintiff offers two responsive arguments, neither of which offer a reprieve from the foregoing conclusion.

---

[3] Although the contract does not explicitly deprive the government of day-to-day supervisory responsibility, "[a] contract between the Government and an independent contractor need not expressly state that the Government 'will refrain from exercising supervision for an independent contractor relationship to exist.'" Courts, 2016 WL 4521687, at *5.

First, Plaintiff mistakenly contends that the Court must accept as true the Complaint's allegations, which assert that Defendants' direct actions caused Plaintiff's injury. Upon a factual attack under Rule 12(b)(1), the Court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Based on the uncontroverted evidence produced by Defendants, Plaintiffs' unsubstantiated allegations about Defendants' responsibility for the property need not be credited.

Second, Plaintiff urges that the motion to dismiss is premature because she has not had the opportunity to take discovery regarding the management of the site and the nature of the relationship between Defendants and any third party contractors. She speculates that, "[t]here are hundreds if not thousands of possibilities which would give rise to the Defendant's liability under the [FTCA] . . . [f]or example, the contract may not be accurate, valid, or enforceable. Alternatively, it may have been the negligence of the defendants in their care of the property prior to the contract with a third party which gave rise to Plaintiff's cause of action." (Pl.'s Resp. Opp'n at p. 6.)

This argument fails for several reasons. Primarily, as set forth above, courts in the Third Circuit have repeatedly dismissed cases under the independent contractor exception, without additional discovery, based upon the language of a contract between the government and the contractor. Moreover, the mere possibility that Defendants' negligence could have been the cause of the dangerous condition is irrelevant. To the extent Defendants may have created any hazardous condition prior to the contract—which was in place and in effect at the time of the

accident—A2Z bore full responsibility to identify and correct it.[4]  Finally, Plaintiff's mere speculation that "the contract may not be accurate, valid, or enforceable," without more, does not adequately provide a basis on which to grant jurisdictional discovery.  See Jasper v. Fed. Emergency Mgmt. Agency, 414 F. App'x 649, 652 (5th Cir. 2011) (finding that government's submission of entire contract between government and contractor to be sufficient for a finding that the independent contractor exception applied; [v]ague assertions of the need for additional discovery are as unavailing as vague responses on the merits").

In short, the operation of the independent contractor exception in this case precludes Defendants' waiver of their federal sovereign immunity.  Consequently, this Court lacks subject matter jurisdiction over this case, and I will grant Defendants' Motion and dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[4]  See Brimfield, 202 WL 31513375, at *3 (finding that management company was responsible for removal of any safety hazards as of effective date of contract).